ORIGINAL
FILED

09 FEB -4 AM 11: 24

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST OF CA S.J.

1  Rachel M. Dollar, SBN 199977
   Sherrill A. Oates, SBN 213763
2  SMITH DOLLAR PC
   Attorneys at Law
3  404 Mendocino Avenue, Second Floor
   Santa Rosa, California 95401
4  Telephone: (707) 522-1100
   Facsimile: (707) 522-1101

5

6  Attorneys for Defendant, Aurora Loan Services, LLC, erroneously sued and served
   as Aurora Loan Services, Inc.; Defendant Lehman Brothers Bank, FSB,
7  erroneously sued and served as Lehman Brothers Bank, FBS; Mortgage Electronic
   Registration Systems, Inc, a Delaware Corporation

8          UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA

9                                   SAN JOSE DIVISION

10 MARK MURILLO, an individual and TAMI L.      CASE NO.: C09 00500
   MURILLO, an individual,,
11                                              DEFENDANT AURORA LOAN SERVICES
           Plaintiffs,                          LLC'S NOTICE OF REMOVAL PURSUANT
12 v.                                           TO 28 U.S.C. §§ 1331 AND 1441

13 LEHMAN BROTHERS BANK, FSB, A                 [FEDERAL QUESTION]
   FEDERAL SAVINGS BANK; CAL-
14 WESTERN RECONVEYANCE
   CORPORATION, AS TRUSTEE; AURORA
15 LOAN SERVICES, INC., a Delaware
   Corporation; GMAC MORTGAGE, LLC, a
16 Delaware Limited Liability Corporation;
   MORTGAGE ELECTRONIC
17 REGISTRATION SYSTEMS, INC., a Delaware
   Corporation, BARCLAYS, PLC, a Foreign
18 Corporation; and DOES 1 through 50, inclusive,

19         Defendants.

20

21         TO THE CLERK OF THE ABOVE-ENTITLED COURT:

22         PLEASE TAKE NOTICE that Aurora Loan Services ("Aurora") erroneously sued herein as

23 Aurora Loan Services, Inc., Lehman Brothers Bank, FSB, ("LBB") erroneously sued as Lehman

24 Brothers Bank, FBS; and Mortgage Electronic Registration Systems, Inc. ("MERS") (together,

25 "Aurora defendants") hereby files this Notice of Removal pursuant to 28 U.S.C. §§1331 and 1441

26 the state court action described below:

27 **I. THE PROCEDURAL REQUIREMENTS FOR REMOVAL HAVE BEEN SATISFIED.**

28         1. On January 13, 2009, Plaintiffs Mark Murillo and Tami Murillo filed an action in the

Superior Court of California, County of Santa Clara, entitled Murillo v. Aurora Loan Services, et al., case number 108CV131638. True and correct copies of all pleadings filed in the State Court Action have been attached hereto as **Exhibit A**.

2. This Notice of Removal is timely because the Aurora defendants first received a copy of the complaint on January 29, 2009.

## II. JURISDICTION

3. This action is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1331 and which may be removed to this Court by Aurora pursuant to the provisions of 28 U.S.C. § 1441 (b) and (c) in that the Complaint asserts claims against Aurora allegedly arising under federal law, specifically, the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.,* and Regulation Z ("Reg.Z") 12 C.F.R. §226; *See* Complaint, at ¶¶59-64, Third and Fourth Causes of Action.

4. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 because any remaining claim(s) asserted in the Complaint so relate to the claims within this Court's original jurisdiction that they form part of the same case or controversy.

5. As the Complaint was filed in the Superior Court of the State of California, County of Santa Clara, venue in this District is proper. *See* 28 U.S.C. § 1441 (a) (providing for removal "to the district court of the United States for the district and division embracing the place" where the state court action is pending). Civil Local Rule 3-2(e) provides that "all civil actions which arise in the counties of Santa Clara, Santa Cruz, San Benito or Monterey shall be assigned to the San Jose Division."

6. Aurora, LBB and MERS are represented by the undersigned. Upon information and belief, no other defendants have been served and thus, their consent to this removal is not required.

Dated: February 3, 2009

SMITH DOLLAR PC

By
Rachel M. Dollar, Attorneys for Aurora Loan Services, LLC, erroneously sued and served as Aurora Loan Services, Inc.; Lehman Brothers Bank, FSB, erroneously sued and served as Lehman Brothers Bank, FBS; Mortgage Electronic Registration Systems, Inc, a Delaware Corporation



# TABLE OF CONTENTS

## EXHIBITS TO NOTICE OF REMOVAL

*Murillo, et al.vs. Lehman Brothers Bank, FBS, a Federal Savings Bank, et al.*
Santa Clara County Superior Court
Case Number 108CV131638

Exhibit A:

Civil Case Cover Sheet, Amended Summons and Amended Complaint ..............1-34

# EXHIBIT A

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Lawrence P. Ramirez, Esq. SBN#141350
The Litigation Law Group
111 North Market Street, Suite 1010
San Jose, California 95113
TELEPHONE NO: (408) 971-1119       FAX NO (408) 971-1129

ATTORNEY FOR (Name)

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Clara
STREET ADDRESS 191 North First Street
MAILING ADDRESS 191 North First Street
CITY AND ZIP CODE San Jose, California 95113
BRANCH NAME:

**ENDORSED**

2009 JAN 27 ∴ A 0: 19

David H. Cowarth, Clerk of the Superior Court
County of Santa Clara, California
By _____
Deputy Clerk

CASE NAME
Mark Murillo and Tami L. Murillo v Aurora Loan Services, Inc. et.al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 108CV131638 |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: DEPT |

Items 1–6 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[✓] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management.
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a.[✓] monetary   b.[✓] nonmonetary; declaratory or injunctive relief   c.[✓] punitive
4. Number of causes of action (specify): 16 (sixteen)
5. This case [ ] is [✓] is not a class action suit
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: JANUARY 27, 2009

Lawrence P. Ramirez, Esq.
(TYPE OR PRINT NAME)                        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code or Welfare and Institutions Code) (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**
**AMENDED**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov
American LegalNet, Inc.
www.FormsWorkflow.com

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

To Plaintiffs and Others Filing First Papers. If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

To Parties in Rule 3.740 Collections Cases. A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

To Parties in Complex Cases. In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

CIVIL CASE COVER SHEET

MENDED
## SUMMONS
### (CITACION JUDICIAL)

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

ENDORSED

2009 JAN 27 ! A ⊕ 20

Endorsed of Superior Court
(County of Santa Clara, California)
By:
        Deputy

**SUM-100**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
LEHMAN BROTHERS BANK, FBS, A FEDERAL SAVINGS BANK

Additional Parties Attachment form is attached

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTA DEMANDANDO EL DEMANDANTE):*
MARK MURILLO, an individual and TAMI L. MURILLO, an individual

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* Superior Court of California, County of Santa Clara<br>191 North First Street<br>San Jose, California 95113 | CASE NUMBER: *(Número del Caso)* 108CV131638 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Lawrence P. Ramirez, Esq. 111 North Market Street, Suite 1010, San Jose, CA. 95113 (408) 971-1129

| DATE: *(Fecha)* | JAN 2 7 2009 | DAVID H. YAMASAKI Chief Executive Officer/ Clerk, by *(Secretario)* | Clerk, by _____ | ____, Deputy *(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010))*

NOTICE TO THE PERSON SERVED: You are served

[SEAL]

1. ☐ as an individual defendant
2. ☐ as the person sued under the fictitious name of *(specify)*

3. ☒ on behalf of *(specify)* Aurora Loan Services, Inc., a Delaware corporation

    under ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
             ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
             ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
             ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412, 20, 465
[American LegalNet, Inc. | www.USCourtForms.com]

| SHORT TITLE | CASE NUMBER |
|---|---|
| Mark Murillo and Tami L. Murillo v Aurora Loan Services, Inc. et.al. | 108CV131638 |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons "Additional Parties Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party):

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

CAL-WESTERN RECONVEYANCE CORPORATION, AS TRUSTEE, AURORA LOAN SERVICES, INC., a Delaware Corporation; GMAC MORTGAGE, LLC., a Delaware Limited Liability Corporation, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, BARCLAYS, PLC, a Foreign Corporation; and DOES 1 through 50, inclusive

Page ___ of ___

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

ADDITIONAL PARTIES ATTACHMENT
Attachment to Summons

American Legalnet, Inc.
www.FormsWorkflow.com

LAWRENCE P. RAMIREZ, (State Bar No. 141550)
HENRY CHUANG, (State Bar No. 250628)
THE LITIGATION LAW GROUP
111 North Market Street, Suite 1010
San Jose, CA 95113
Telephone: (408) 971-1119
Facsimile: (408) 971-1129

ENDORSED

2009 JAN 27 A 0 18

Chief of Superior Court of California
County of Santa Clara
By_____
Deputy

Attorneys for Plaintiffs
MARK MURILLO and TAMI L. MURILLO

# SUPERIOR COURT OF CALIFORNIA

## IN AND FOR THE COUNTY OF SANTA CLARA

### UNLIMITED CIVIL CASE

MARK MURILLO, an individual and TAMI L. MURILLO, an individual,

    Plaintiffs,

vs.

LEHMAN BROTHERS BANK, FBS, A FEDERAL SAVINGS BANK, CAL-WESTERN RECONVEYANCE CORPORATION, AS TRUSTEE, AURORA LOAN SERVICES, INC., a Delaware Corporation; GMAC MORTGAGE, LLC., a Delaware Limited Liability Corporation, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, BARCLAYS, PLC, a Foreign Corporation; and DOES 1 through 50, inclusive,

    Defendants

Case No.: 108CV131638

AMENDED COMPLAINT FOR VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200, VIOLATION OF CIVIL CODE SECTION 2923.5, VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT OF 1974 (12 USC§2601), VIOLATION OF TRUTH IN LENDING ACT (12 CFR §226), FRAUD, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, CONVERSION, QUIET TITLE, FRAUD IN THE INDUCEMENT, UNFAIR BUSINESS PRACTICES, BREACH OF FIDUCIARY DUTY, DEFAMATION, WRONGFUL FORECLOSURE, CIVIL CONSPIRACY, AIDING AND ABETTING, UNLAWFUL JOINT VENTURE, INJUNCTIVE RELIEF, OTHER EQUITABLE RELIEF

Plaintiff MARK MURILLO and Plaintiff TAMI L. MURILLO (hereinafter "Murillo"),

by its attorney, for its causes of actions against defendants LEHMAN BROTHERS BANK, FBS,

A FEDERAL SAVINGS BANK, CAL-WESTERN RECONVEYANCE CORPORATION, AS

TRUSTEE, AURORA LOAN SERVICES, INC., a Delaware Corporation; GMAC
MORTGAGE, LLC., a Delaware Limited Liability Corporation, MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., a Delaware Corporation, BARCLAYS, PLC, a Foreign
Corporation; and DOES 1 through 50, inclusive, (hereinafter collectively known as
"Defendants") alleges the following, on information and belief:

## PARTIES

1.  Mark Murillo and Tami L. Murillo are individuals, residing at 640 West San
Martin Avenue, San Martin, California 95046 in Santa Clara County (hereinafter "Subject
Property"), at all times mentioned herein.

2.  Upon information and belief, Defendant LEHMAN BROTHERS BANK, FBS, A
FEDERAL SAVINGS BANK, (hereinafter "LEHMAN"), at all times mentioned herein, was
doing business in the State of California. The form of this business entity is unknown at this
time.

3.  Upon information and belief, Defendant CAL-WESTERN RECONVEYANCE
CORPORATION, (hereinafter "CAL-WESTERN"), at all times mentioned herein, was a
Corporation doing business in the State of California.

4.  Upon information and belief, Defendant AURORA LOAN SERVICES, INC.
(hereinafter "AURORA"), at all times mentioned herein, was a Delaware Corporation doing
business in the State of California.

5.  Upon information and belief, Defendant GMAC MORTGAGE, LLC. (hereinafter
"GMAC"), at all times mentioned herein, was a Delaware Limited Liability Corporation doing
business in the State of California

6. Upon information and belief, Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (hereinafter "MERS"), at all times mentioned herein, was a Delaware Corporation doing business in the State of California.

7. Upon information and belief, Defendant BARCLAYS, PLC, (hereinafter "BARCLAYS"), at all times mentioned herein, was doing business in the State of California. The form of this business entity is unknown at this time.

8. Plaintiffs are ignorant of the true names and capacities of Defendants sued as DOES 1-50, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained.

9. Plaintiffs are informed and believes, and based on information and belief, alleges that at all times mentioned in this complaint Defendants were agents, servants, partners and/or employees of co-defendants, and in doing the actions mentioned below were, unless otherwise alleged, within the course and scope of their authority as such agent, servant, partner, and/or employee with the permission and consent of co-defendants.

10. Any allegations about acts of any corporate or other business defendant means that the corporation or other business did the acts alleged through its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

11. Plaintiffs believes and is informed and, on that basis alleges, that each of said Defendants, were in some manner legally responsible for the unlawful actions, unlawful policies, and unlawful practices, complained of herein. Plaintiffs will amend this Complaint to set forth the true names and capacities of said Defendants, along with the appropriate charging allegations when the same have been ascertained.

12. Venue and jurisdiction is proper in this court because injury and damage to Plaintiffs occurred in its jurisdictional area, the property is located in this jurisdictional area and the unlawful practices were committed in this jurisdictional area.

## GENERAL ALLEGATIONS

13. This action is brought against Defendants, who engaged in fraud, breach of fiduciary duty, conversion, defamation, wrongful foreclosure, and other illegal and wrongful acts under the rubric of unfair business practices.

14. Defendants are mortgage lenders. Defendants residential lending business model consists of making as many subprime residential loans, or loans made to borrowers with limited or impaired credit.

15. Defendants did business as a wholesale lender. That is, mortgage brokers, under contracts with Defendants and working closely with Defendants sales representatives, originated loans which were underwritten by Defendants.

16. Defendants sold a majority of their residential subprime loans to the secondary market, that is, third-party investors or qualifying special-purpose entities that issue interest-bearing securities representing the loans interest stream. After selling the loans for securitization or to third-party investors, Defendants typically must repurchase those loans only in limited circumstances, for instance, in the event of documentation errors, underwriting errors, fraud, or early payment defaults.

17. While Defendants claimed to maintain underwriting guidelines that assessed the ability of the Plaintiffs to repay debt, they purposefully relaxed their underwriting guidelines and sold a risky loan product to Plaintiffs to increase their loan origination volume. Defendants

underwriting standards eventually grew so lax that in many instances, its underwriters took no meaningful steps to determine whether Plaintiffs could actually repay a loan for the purpose of funding higher loan volumes for leveraged returns.

18.     Defendants violated and ignored Section 226 of the Truth In Lending Act (also commonly referred to as Regulation Z and 12 CFR Section 226). Defendants failed to examine Plaintiffs current and expected "Repayment ability" and failed to clearly and conspicuously disclose Plaintiffs key provisions of Plaintiffs' mortgage, including but not limited to such details as the eventually reset interest rate, specific loan terms, and the total dollar amount the mortgage will cost over time.

19.     Defendants violated the Real Estate Settlement Procedures Act of 1974 (12 USC § 2601) (hereinafter "RESPA"), when it provided undisclosed financial incentives, fees, payments and other "things of value" to its agents, account executives, loan officers and brokers marketing and selling its product, said payment and incentives constituting a prohibited kickback, referral fee or other "things of value" in violation of Section 8 of RESPA.

20.     Defendants business model of making loans for quick resale rendered Defendants indifferent to whether Plaintiffs could afford the loan beyond Defendants exposure period to risk. This risk period was in effect only as long as it was required to sell the loan to the secondary market. This indifference translated into Defendants maximizing loan resale profits through funding Plaintiffs' unfair and exceedingly risky loan products, unfair underwriting practices, deceptive loan sales practices through its own conduct and the conduct of mortgage brokers, and unsuspecting Plaintiffs facing unfair and deceptive Defendants loans that the borrower could not afford.

21.     Defendants focused on creating unduly risky loans for profitability. Defendants received fees not only for originating loans but reselling pre-packaged loan bundles or securities at a guaranteed rate of return. Due to Defendants compensation structure, and policies, employees, brokers, loan officers, and related Defendants were encouraged to steer Plaintiffs into a costly mortgages with higher interest rates and for a larger amount in order to maximize their own profits. Defendants and their agents and brokers steered Plaintiffs, who had a good credit score and income into loans with high interest rates. To support Plaintiffs' application for the unduly risky loan, agents and brokers overstated Plaintiffs' income and/or ability to pay, and inflated the appraised value of the applicant's home. The Defendants, intentionally or recklessly, failed to verify or audit the information and avoided implementing reasonable measures that would have prevented or limited these fraudulent practices.

22.     To further increase Defendants revenue, Plaintiffs' loan was designed not for long-term viability, but for short-term refinancing, and brokers and agents promised Plaintiffs could refinance before the loan became unaffordable when the introductory rate expired.

23.     Defendants also attempted to increase their profit margins and the amount loans generated by creating residential mortgage loans (hereinafter "RML") and other loans in the form of adjustable rate mortgages (hereinafter "ARMs") that Defendants sold to Plaintiffs. This ARM was a mortgage that contained a low introductory rate and a rate for the first period of the loan. This first period was anywhere from one to seven years. After the fixed period, the interest rate of the ARM would adjust, generally substantially upwards, and would increase monthly payments that the Defendants knew the Plaintiffs could not pay.

24.     To further increase profit margins, Defendants worked with appraisers and other agents to inflate the value of Plaintiffs' home. Through Defendants policies of choosing the

appraiser and hiring only appraisers that would appraise the value of the property at whatever the Defendants loan called for, Defendants could increase the property value and therefore increase the loan amount subsequently raising their fees in the process. By increasing the value of the loan, Defendants would be able to resell the RML at a higher price to increase their profit margins.

25. In addition to their unfair, deceptive, and discriminatory loan origination practices, Defendants have also engaged in unfair or deceptive practices in servicing the loans they made to Plaintiffs, including: (1) failing to accurately credit Plaintiffs' payments to Plaintiffs' accounts; (2) assessing and demanding substantial, unwarranted costs and fees under threat of foreclosure; (3) pressuring Plaintiffs facing imminent foreclosure to enter into reinstatement or other contracts with oppressive terms, without an adequate opportunity to consult legal counsel; and (5) demanding exorbitant reinstatement amounts, including fees and costs that are neither bona fide nor reasonable.

I. DEFENDANTS LOANS ARE STRUCTURALLY UNFAIR, DESIGNED TO BE DIFFICULT TO UNDERSTAND DUE TO THEIR MULTIPLE LAYERS OF RISK AND TOOK NO MEANINGFUL CONSIDERATION OF WHETHER PLAINTIFFS COULD AFFORD TO PAY THE LOANS.

26. Defendants' business model generated a variety of aggressive, exceedingly risky, and unfair loan products reflecting Defendants indifference to whether Plaintiffs could afford its loans. Specifically, Defendants, through its sales representatives and the mortgage brokers it contracted with, induced Plaintiffs into purchasing residential loan products that Defendants knew or should have known would result in foreclosure, absent serial refinancing into even higher cost loans.

27. As discussed further below, Defendants loan proposals to Plaintiffs included:

a. 100% financing where Defendants would approve a loan arrangement that provided one loan for 80% and another "piggyback loan" for 20% of the purchase price.

b. ARM features consisting of a lower fixed interest rate for a short-term period, followed by an increase to a higher, adjustable rate (calculated by adding points ("spread") to an interest rate index), which then could further increase every six months for the remaining years.

28. Defendants and the mortgage brokers selling its products approved Plaintiffs for these ARM loans based only on the initial fixed rate, without regard to Plaintiffs' ability to pay after the initial lower rate period. Even though Defendants knew that once the initial period ended, there would be a substantial and likely unaffordable monthly payment increase, was an expected result of its ARM loans, Defendants and its brokers selling this loan to Plaintiffs its loans failed to meaningfully account for those payment adjustments in approving and selling loans and thereby failed to meaningfully account for borrowers ability to repay the Defendants loans. Typically, Defendants viewed this loan as a short-term loan that would require serial refinancing before the loan adjusted which increased fees and revenue for the Defendants. However, Defendants and the brokers failed to meaningfully disclose the interest rate increases inherent in the RML and impact it would have on the monthly payments and Plaintiffs' ability to pay the loans. If any statements were made by the Defendants in connection with these costs, they were usually about the ease in which refinancing would be available, the increase of property value, the waiver of prepayment penalties, and other fraudulent claims designed to induce the borrower to sign the loan.

29.     Starting with the predictable risks inherent in ARM loans, underwriting those loans based only on the introductory-rate period, and failing to meaningfully disclose to Plaintiffs the terms and risks of the ARM loans, Defendants then added additional layers of risk to the loan product it approved and sold to Plaintiffs. These additional layers of risk, each of which is common to Defendants loans, include, without limitation:

a.  "No doc", "low doc" or "stated income" loans, that is, approving Plaintiffs without considering or verifying the relevant documentation related to the borrowers credit qualifications, including the Plaintiffs' income, assets, and employment;

b.  Approving a loan that contained features that are known to require prompt refinancing to maintain an affordable monthly payment and avoid defaults or foreclosure;

c.  Including substantial prepayment penalties that, at times, frequently last beyond the introductory fixed rate period, thereby penalizing Plaintiffs who was encouraged to refinance his loans once the introductory rate adjusts;

d.  Approving Plaintiffs who had inadequate debt-to-income ratios that did not properly consider Plaintiffs' ability to meet their overall level of indebtedness and common housing expenses in excess of 50% of monthly earnings; and/or

e.  Failing to accurately and meaningfully disclose to Plaintiffs that monthly loan payments do not include additional costs such as property taxes and insurance;

f.  Urging Plaintiffs to encumber Plaintiffs' home up to 100% or more of the assessed value;

g. Placing Plaintiffs in a "piggyback" second mortgage in the form of higher interest rate home equity lines of credit ("HELOCs") while obscuring the total monthly payment obligations and the amount available to them on them;

h. Enticing Plaintiffs into accessing their homes equity using "HELOCs" with teaser introductory rate periods and forcing borrowers to borrow a minimum percentage of the homes equity thereby accelerating the need for multiple refinancing of debt obligations

30. Defendants failed to explain and/or disclose in a meaningful manner the terms and conditions of their loan products and instead provided Plaintiffs with incomplete or confusing information relative to product features, material loan terms and product risks, prepayment penalties, and the borrowers obligations for property taxes and insurances. In particular, Defendants brokers encouraged Plaintiffs not to worry about most loan terms, especially upward adjusting interest rates and prepayment penalties, because Defendants brokers would arrange a new loan prior to the ARM adjustment without regard to future property values, economic states, or borrowers employment stability. Defendants also exacerbated the predictable harm inherent in these multiple-risk layered ARM products by combining these terms with 100% financing.

31. Combined, these activities caused over inflation the value of property which would further increase Defendant's bottom lines at a cost to the Plaintiffs.

II. DEFENDANTS ENCOURAGED MORTGAGE BROKERS UNFAIR AND DECEPTIVE CONDUCT BY REWARDING BROKERS WHO SOLD RISKY AND INAPPROPRIATE LOAN PRODUCTS WITH LITTLE OR NO DOCUMENTATION AND PROVIDED NO MEANINGFUL OVERSIGHT OF BROKERS CONDUCT WITH RISK LACED INCENTIVES.

32. Defendants further exacerbated the unfair and deceptive loans described above by relying on third party mortgage brokers to sell its loans. Defendants induced and rewarded these

mortgage brokers to originate unduly risky, inappropriate, and in some cases, fraudulent, loans while failing to monitor these brokers' sales and underwriting conduct in a meaningful way

33. Driven by its push for market share, Defendants did whatever it took to sell more loans, faster – including easing its underwriting criteria and disregarding minimal oversight of mortgage brokers. By easing and disregarding its underwriting criteria, Defendants increased the risk that Plaintiffs would lose his home.

34. For example, Defendants, mortgage brokers, and their agents eased their underwriting standard by allowing low and no documentation loans. Traditionally, lenders required borrowers seeking mortgage loans to document their income by providing W-2's or tax returns or other documents such as bank statements, asset statements, and pay stubs. In addition Defendants, however, disregarded such documentation requirements with respect to its riskiest loan products and introduced a variety of reduced or no documentation loan programs that eased and quickened the loan origination process. Further, they would allow Stated Income Stated Assets (hereinafter "SISA") programs where a borrower's income and assets were stated but not verified at 100% loan to value.

35. These low and no documentation programs, such as SISA, enabled Defendants and their brokers to process loans more quickly and therefore to originate more loans. Stated income loans also encouraged the overstating of income – loan brokers and officers either overstated the Plaintiffs' income without his or her knowledge, or led the Plaintiffs into overstating his or her income without explaining the risk of default that the Plaintiffs would face with a loan and monthly fees Plaintiffs could not actually afford.

36. Defendants and their brokers also relaxed traditional underwriting standards used to separate acceptable from unacceptable risk in order to produce more loans for the secondary

market. Initially, the depth of credit and thereby worthiness of the Plaintiffs played a crucial role in determining whether Plaintiffs could get a loan. However, as the pursuit of profits became the primary goal of Defendants, the credit score itself became most important with disregard for the Plaintiffs' future ability to pay based on previous payment habits. Further, Defendants and their brokers began disregarding the importance of loan-to-value ratios, debt-to-income ratios, and other factors designed to protect Plaintiffs and Plaintiffs' ability to pay within their means for the entire lifetime of the RML.

37.     Due to the fact that riskier and higher loan amounts would produce a greater financial reward to Defendants, they encouraged and incentivized brokers to focus on producing only those loans. Part of this structure was higher commission and other incentives to mortgage brokers who provided large and risky subprime loans. In return, the Defendants passed on the excess compensation to the borrower by way of increased origination fees, higher interest rates, longer prepayment penalty periods, or larger credit spreads above the index value on ARMs.

38.     To further encourage brokers and agents to bring in more RML's, Defendants provided little to no oversight of brokers conduct. As long as brokers provided loans that Defendants could sell to the secondary market, Defendants had the financial incentive to continue receiving loans regardless of the documentation, or lack thereof, on the RML's.

39.     Also, to further the deceptive scheme, Defendants created a high-pressure sales environment that propelled its mortgage brokers to meet high production goals and close as many loans as they could without regard to Plaintiffs' ability to repay. Defendants high-pressure sales environment also propelled mortgage brokers to sell the riskiest types of loans, such as payment option and hybrid ARMs, because mortgage brokers could easily sell them by deceptively focusing Plaintiffs' attention on the low initial monthly payments or interest rates

thereby not disclosing the true financing cost of the loan. This system of compensation aided and abetted brokers in breaching their fiduciary duties to Plaintiffs by inducing Plaintiffs to accept unfavorable loan terms without full disclosure of the Plaintiffs' options and also compensated brokers beyond the reasonable value of the brokerage services they rendered.

## SPECIFIC ALLEGATIONS

40.   Prior to January 03, 2006 Defendant Aurora held the primary loan in the Subject Property.

41.   The Subject Property was refinanced on January 03, 2006.

42.   This refinance created two loans for Plaintiff Murillo.

43.   The primary loan is held by Defendant Aurora as a 7-year interest only loan at 7% for $1,400,000.00.

44.   The loan taking second position was sold by Defendant Aurora to Defendant GMAC as a 30/15 Fixed Payment Balloon at 8.25% for $300,000.00.

45.   The current loan amount is 1,700,000.00 whereas the Subject Property is estimated to be worth, 1,224,000.00 or less

46.   The monthly payments to Defendant Aurora for the loan in the first position equals, $8,139.94.

47.   The monthly payments to Defendant GMAC in the second position equals, $2,253.80.

48.   The total monthly mortgage payment for Plaintiffs Murillo equals $10,393.74

49. Plaintiffs were induced to enter into a subprime loan under the facts and circumstances alleged in this complaint and said allegations are further incorporated herein by reference as though fully stated herein.

50. Defendant Aurora engaged in home retention options with Plaintiffs Murillo but later denied said options for failing to meet investor criteria/deficit.

51. The Notice of Default was issued on October 21, 2008 based on the Plaintiffs delinquent account with Defendant Aurora.

## FIRST CAUSE OF ACTION
## VIOLATIONS OF BUSINESS AND PROFESSIONS CODE SECTION 17200, ET. SEQ.
## (AS TO ALL DEFENDANTS)

52. Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

53. Defendants have violated and continue to violate Business and Professions Code section 17200, et. seq. making untrue or misleading statements, or by causing untrue or misleading statement to be made, with the intent to induce Plaintiffs into entering into the RML which are the subject of this Complaint. These untrue and misleading statements include but are not necessarily limited to:

a. Statements that Defendants were mortgage loan experts that could be trusted to help Plaintiffs close his short sale and avoid foreclosure in a manner and for an amount that are consistent with market conditions;

b. Statements regarding the terms and payment obligations, including statements of the duration of the original payment, duration and amount of the interest rate, and statements obfuscating the risks of the loan.

c. Statements regarding the prepayment penalty, including that the loan had no prepayment penalty or that the prepayment penalty could be easily waved;

d. Statements that the home value would continue to rise and that Plaintiffs could refinance quickly;

e. Defendants falsely stated to Plaintiffs that it did not make any payments of kickbacks, fees or other "things of value" in violation of RESPA.

54. Defendants failed to consider Plaintiffs' ability to repay his mortgage and failed to disclosure the cost of this mortgage as required by the Truth in Lending Act.

55. Defendants knew or by the exercise of reasonable care should have known, that these statements or omissions were untrue or misleading at the time they were made. Defendants actions stated herein are in violation of Business and Professions Code Section 17200 et. seq. and are have caused Plaintiffs damage in an amount to be determined at trial. Second, Plaintiffs requests reasonable attorney fees and costs

WHEREFORE, Plaintiffs prays for judgment as set forth below;

## SECOND CAUSE OF ACTION
## VIOLATION OF CIVIL CODE SECTION 2923.5
### (As to All Defendants)

56. Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

57. California Civil Code Section 2923.5 requires Defendants to file a declaration that they complied with this code section prior to filing a notice of default. Defendants failed to make contact with Plaintiffs by personal contact, by phone and failed to perform the due diligence required by the statute. Defendants further failed to make a proper declaration required under Civil Code Section 2923.5.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

58.     As a result of their violation of Civil Code Section 2923.5, Defendants have damaged Plaintiff(s) to the extent that it has clouded title by recording a Notice of Default against the subject property and the amount of said damages are in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
### VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT OF 1974
### (12 USC §2601)
### (AS TO ALL DEFENDANTS)

59.     Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

60.     Defendants have violated the RESPA by engaging in prohibited acts as set forth in this complaint, including but are not necessarily limited to:

   a.  Statements regarding the terms and payment obligations, including statements of the duration of the original payment, duration and amount of the interest rate;

   b.  Statements regarding the prepayment penalty, including that the loan had no prepayment penalty or that the prepayment penalty could be easily waved by making payments of kickbacks, fees or other "things of value"

61.     Defendants knew or by the exercise of reasonable care should have known, that these Statements, acts or omissions were unlawful. Defendants actions stated herein are in violation of the Real Estate Procedures Act of 1974 (RESPA) and have caused Plaintiffs damage in an amount to be determined at trial. Second, Plaintiffs requests reasonable attorney fees and costs

   WHEREFORE, Plaintiffs prays for judgment as set forth below;

## FOURTH CAUSE OF ACTION
### VIOLATION OF TRUTH IN LENDING ACT (12 CFR §226)
### (AS TO ALL DEFENDANTS)

62. Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

63. Defendants have violated the Truth in Lending Act by engaging in prohibited acts as set forth in this complaint, including but are not necessarily limited to:

   a. Defendants failed to examine Plaintiffs current and expected "Repayment Ability";

   b. Failed to clearly and conspicuously disclose Plaintiffs key provisions of Plaintiffs' mortgage, including but not limited to such details as the eventually reset interest rate, specific loan terms, and the total dollar amount the mortgage will cost over time.

64. Defendants knew or by the exercise of reasonable care should have known, that these Statements, acts or omissions were unlawful. Defendants actions stated herein are in violation of the Truth in Lending Act (hereinafter "TILA") and have caused Plaintiffs damage in an amount to be determined at trial. Second, Plaintiffs requests reasonable attorney fees and costs.

WHEREFORE, Plaintiffs prays for judgment as set forth below;

### FIFTH CAUSE OF ACTION
### FRAUD
### (AS TO ALL DEFENDANTS)

65. Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

66.    Defendants represented to Plaintiffs that all the statements made to him in the origination of the RML were true and that the value of the Subject Property which supported the loan was also true. Defendants representations were false and Defendants knew they were false and made such representations without regard to their truth.

67.    When Defendants made their false representations relating to the terms and conditions of the loan and of the value of the property Defendants made with the intent that Plaintiffs would rely on them and sign the loan documents and secure the Subject Property for said loan.

68.    Defendants represented themselves as loan experts and represented their employees or third parties such as the appraiser as experts in the field. Plaintiffs relied on Defendants' representations and said reliance was reasonable due to Defendants advertisement, assertions, and experience in the mortgage industry.

69.    Furthermore, Defendants action were intentional, oppressive, and with fraud or malice in conscious disregard of Plaintiffs' consumer protection rights thereby justifying the award of punitive damages under Civil Code Section 3294 in the amount to be proven at trial.

70.    Defendant's fraud has caused Plaintiffs damage in an amount to be determined at a trial. At a minimum, it includes the irreparable harm to Plaintiffs credit score and the amount overpaid to Defendants on the fraudulently obtained RML on the Subject Property. Second, Plaintiffs requests reasonable attorney fees and costs.

WHEREFORE, Plaintiffs prays for judgment as set forth below;

## SIXTH CAUSE OF ACTION
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
## (AS TO ALL DEFENDANTS)

71.    Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

72.    As mentioned previously, Plaintiffs and Defendants had negotiated a RML. As part of these negotiations, Defendants had a duty to refrain from breaching the implied covenant of good faith and fair dealing.

73.    However, during the negotiations, Defendants negotiated for terms such as a prepayment clause with the promise that the clause would be waived in the future at the time of a refinance. These terms were designed to give Defendants an unfair advantage over Plaintiffs and therefore further induce the Plaintiffs to refinance the RML in the future or be unable to make payments and stay in the home. By negotiating for these conditions, the Defendants breached the implied covenant of good faith and fair dealing.

74.    Due to the Defendants breach of the implied covenant of good faith and fair dealing, Plaintiffs have suffered severe financial hardship. Plaintiffs have been damaged in the amount to be proven at trial. Second, Plaintiffs requests reasonable attorney fees and costs.

WHEREFORE, Plaintiffs prays for judgment as set forth below;

## SEVENTH CAUSE OF ACTION
## CONVERSION
## (AS TO ALL DEFENDANTS)

75.    Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

76.    As mentioned previously, the Defendants induced the Plaintiffs to agree to the RML through fraud, deceit, and unfair business practices in violation of California law. Further, the Defendants set an unjustly high monthly payment by artificially inflating the value of the property to fraudulently justify a larger mortgage.

77.    Through Defendants wrongful acts, the Plaintiffs was told by the Defendants that Plaintiffs would be required to pay exorbitantly high monthly payments or face irreparable harm to be done through negative credit reporting and foreclosure on Plaintiffs' house.

78.    Furthermore, Defendants actions were intentional, oppressive, and with fraud or malice in conscious disregard of Plaintiffs' consumer protection rights thereby justifying the award of punitive damages under Civil Code Section 3294 in the amount to be proven at trial.

79.    Due to the Defendants conversion, Plaintiffs have suffered severe financial hardship. Plaintiffs have been damaged in the amount to be proven at trial. Second, Plaintiffs requests reasonable attorney fees and costs.

WHEREFORE, Plaintiffs prays for judgment as set forth below;

### EIGHTH CAUSE OF ACTION
### QUIET TITLE
### (AS TO ALL DEFENDANTS)

80.    Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

81.    At all times herein, Defendants committed acts of misrepresentations and fraud as to the terms of the loan, mortgage, and sale of the property with the intent to exert undue influence.

82.    Plaintiffs was under unfair persuasion amounting to undue influence because the parties were involved in a fiduciary relationship in which the Plaintiffs was justified in assuming that the Defendants would not act in a manner inconsistent with Plaintiffs' welfare and best interests.

83.    At all times herein, Defendants gained unfair persuasion and undue influence by improper means including but not limited to misrepresentations, undue flattery, and fraud.

84.    Due to Defendants undue influence, they received a deed of trust to the property for a loan that Plaintiffs should not have given or been allowed to take. This loan would not have taken place but for Defendants wrongful conduct.

85.    Furthermore, Defendants action were intentional, oppressive, and with fraud or malice in conscious disregard of Plaintiffs' consumer protection rights thereby justifying the award of punitive damages under Civil Code Section 3294 in the amount to be proven at trial.

86.    Due to the Defendants undue influence, Plaintiffs have suffered severe financial hardship and was forced to give a deed of trust to the Defendants. Plaintiffs have been damaged in the amount to be proven at trial. Second, the Plaintiffs request that the court invalidate the deed of trust on the property. Third, Plaintiffs requests reasonable attorney fees and costs.

WHEREFORE, Plaintiffs prays for judgment as follows;

### NINTH CAUSE OF ACTION
### FRAUD IN THE INDUCEMENT
### (AS TO ALL DEFENDANTS)

87.    Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action

88.    In order to induce the Plaintiffs to agree to the RML, the Defendants made a series of fraudulent promises. These promises include but are not limited to statements about the increase of value of the property, the ease that refinancing would occur, the monthly payments and interest rate.

89.    Plaintiffs reasonably relied on Defendants promises due to the fact that they were mortgage brokers who were presented as experts in the field and that they were bound by a fiduciary obligation to the Plaintiffs.

90.    Furthermore, Defendants action were intentional, oppressive, and with fraud or malice in conscious disregard of Plaintiffs consumer protection rights thereby justifying the award of punitive damages under Civil Code Section 3294 in the amount to be proven at trial.

91.    Defendants fraud has caused Plaintiffs damage in an amount to be determined at a trial. At a minimum, it includes the irreparable harm to Plaintiffs credit score and the amount overpaid to Defendants on the fraudulently obtained RML on the Subject Property  Second, Plaintiffs requests reasonable attorney fees and costs.

WHEREFORE, Plaintiffs prays for judgment as set forth below;

## TENTH CAUSE OF ACTION
## UNFAIR BUSINESS PRACTICES
## (AS TO ALL DEFENDANTS)

92.    Plaintiffs realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

93.    Defendants fraudulent acts, business model, and change of underwriting standards were designed to create an environment of unfair business practices in which Defendants could wrongfully profit. These actions included artificially raising the value of the home in order to

allow for a larger loan to maximize the Defendants profits. Further, Defendants false promises and statements were designed to unfairly prejudice Plaintiffs and profit from Plaintiffs' loss.

94. Furthermore, Defendants actions were intentional, oppressive, and with fraud or malice in conscious disregard of Plaintiffs consumer protection rights thereby justifying the award of punitive damages under Civil Code Section 3294 in the amount to be proven at trial.

95. Due to the Defendants unfair business practices, Plaintiffs have suffered severe financial hardship. Plaintiffs have been damaged in the amount to be proven at trial. Second, Plaintiffs requests reasonable attorney fees and costs.

WHEREFORE, Plaintiffs prays for judgment as set forth below;

### ELEVENTH CAUSE OF ACTION
### BREACH OF FIDUCIARY DUTY
### (AS TO ALL DEFENDANTS)

96. Plaintiffs realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

97. Under California law, mortgage brokers have a fiduciary duty to their clients. In this case, the Defendants have a fiduciary obligation to Plaintiffs. This obligation requires that the Defendants have a duty of care, loyalty, candor and a responsibility to put the interest of the Plaintiffs before the Defendants.

98. By the acts, transactions and courses of conduct alleged herein, Defendants unfairly deprived Plaintiffs of the true value of Plaintiff's home.

99. As demonstrated by the allegations above, defendants breached their fiduciary obligation to the Plaintiffs by, and not limited to, these following reasons

a. Defendants fraudulent advertisement was designed to entice the Plaintiffs to accept risky RML's when there were better options;

b. Defendants lowered their underwriting standards in order to maximize their profits without any consideration of Plaintiffs' ability to pay;

c. Defendants policy of pushing high risk ARMs that was in the long run against Plaintiffs' best interest but benefited the Defendants;

d. Defendants also received a secret profit in this transaction and a higher profit for higher risk, larger loans that was not disclosed to the Plaintiffs;

e. Defendants actively sought to inflate the property value through a variety of means and therefore increasing the amount of the loan and the amount that the Plaintiffs would be obligated to pay.

100.    Furthermore, Defendants action were intentional, oppressive, and with fraud or malice in conscious disregard of Plaintiffs' consumer protection rights thereby justifying the award of punitive damages under Civil Code Section 3294 in the amount to be proven at trial.

101.    Due to the Defendants breach of their fiduciary obligations, Plaintiffs have suffered severe financial hardship. Plaintiffs have been damaged in the amount to be proven at trial. Second, Plaintiffs requests reasonable attorney fees and costs.

WHEREFORE, Plaintiffs prays for judgment as set forth below;

## TWELFTH CAUSE OF ACTION
### DEFAMATION
### (AS TO ALL DEFENDANTS)

102.    Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

103.   In an attempt to coerce payment out of the Plaintiffs in regards to the fraudulently obtained RML, the Defendants threatened and actually reported to credit agencies and other third parties that Plaintiffs was in default on the RML for a payment that was incorrectly assessed.

104.   Defendants knowingly made these statements with full knowledge of Defendants wrongful and fraudulent conduct and the Defendants were full aware that the RML was obtained illicitly. Even with the knowledge of their wrongful acts and illegally obtained RML, the Defendants still made false statements about the amount that the Plaintiffs owed and did not pay to third parties in an attempt to defame Plaintiffs' reputation and lower the credit score.

105.   Furthermore, Defendants action were intentional, oppressive, and with fraud or malice in conscious disregard of Plaintiffs' rights thereby justifying the award of punitive damages under Civil Code Section 3294 in the amount to be proven at trial.

106.   Due to the Defendants defamation, Plaintiffs have suffered severe financial hardship Plaintiffs have been damaged in the amount to be proven at trial   Second, Plaintiffs requests reasonable attorney fees and costs.

WHEREFORE, Plaintiffs prays for judgment as set forth below;

## THIRTEENTH CAUSE OF ACTION
### CIVIL CONSPIRACY
### (As to All Defendants)

107.   Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

108.   Defendants, and each of them, agreed to form and operate a business relationship wherein the originator of the loan would process the loan application in a manner that each defendant knew or should have know was malicious, wrongful, and unlawful for the

reasons stated in this complaint. The business relationship between the parties gave the originator of the loan the right to assign, sell or otherwise transfer said unlawfully originated loan to its fellow defendants, which each defendant would, in turn, acquire the right to sell, assign or otherwise transfer for a profit.

109. As a result of this conduct, Defendants, and each of them, damaged Plaintiff in an amount to be proven at trial.

WHEREFORE, Plaintiffs prays for judgment as set forth below;

## FOURTEENTH CAUSE OF ACTION
### AIDING AND ABETTING
### (As to all Defendants)

110. Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

111. Defendants, and each of them, knew of the conduct of the other. Defendants and each of them knew that the Defendants originating and processing the subject loan in the manners alleged and fully described in this complaint. Said Defendants knew that the Defendant that originated the loan in with deceptive and unlawful acts and practices as alleged herein. In addition to the knowledge each Defendant had as to the conduct of the other, each Defendant gave substantial assistance and encouragement to each other in the performance of said deceptive and unlawful. Defendants, and each of them, profited from said conduct.

112. As a result of this conduct, Defendants, and each of them, damaged Plaintiff in an amount to be proven at trial.

WHEREFORE, Plaintiffs prays for judgment as set forth below;

## FIFTEENTH CAUSE OF ACTION
### UNLAWFUL JOINT VENTURE
### (As to all Defendants)

113. Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

114. Defendants, and each of them, entered into an agreement to originate, purchase, assign, sell and otherwise transfer the subject mortgage loan between themselves and others for a profit. The agreement between the Defendants, and each of them, was formed and agreed to with the intent to originate, purchase, assign, sell and otherwise transfer the subject mortgage loan between themselves and others for a profit. Defendants, and each of them, contributed their property, financing, skill, knowledge or effort in furtherance of this agreement. Defendants, and each of them, exercised control over the execution of the agreement, and each party knew the amount of profit margin would be made on the sale, assignment or other transfer of the subject mortgage loan

115. As a result of this conduct, Defendants, and each of them, damaged Plaintiff in an amount to be proven at trial.

WHEREFORE, Plaintiffs prays for judgment as set forth below;

## SIXTEENTH CAUSE OF ACTION
### INJUNCTIVE RELIEF
### (AS TO ALL DEFENDANTS)

116. Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

117. As permitted by CCP §526(1), the Plaintiffs Murillo has made several clear and convincing causes of actions in which the Plaintiffs are likely to succeed. Those arguments, including arguments for fraud, breach of fiduciary duty, unfair business practices, and others, are factually supported and are likely to lead to a decision in favor of Plaintiffs. On this ground alone, the court may grant the temporary restraining order as permitted under CCP section 526(1).

118. Defendants threatened wrongful conduct to sell the property to a third party, unless and until enjoined and restrained by order of this court, will cause great and irreparable injury to Plaintiffs by the forced sale of the property. Further, any forced sale of the property will reduce the value of the property and jeopardize Plaintiffs interest in the property On this ground alone, the court may grant the temporary restraining order as permitted under CCP section 526(2).

119. Plaintiffs have no adequate remedy at law for the injuries that are threatened as a foreclosure and forced sale would wrongfully deprive Plaintiffs of their property rights and reduce their equity interest in the property. On this ground alone, the court may grant the temporary restraining order as permitted under CCP section 526(4).

120. If Defendants are allowed to sell the property, Plaintiffs would be required to file a separate suit to reverse the sale of the foreclosed property. This would lead to a multiplicity of judicial actions. On this ground alone, the court may grant the temporary restraining order as permitted under CCP section 526(6).

121. As a proximate result of Defendants wrongful conduct, Plaintiffs equity interest and potential sale has been totally lost. Plaintiffs will be further damaged if Defendant is allowed to proceed with the sale of the property. The full amount of this damage is not now known to

Plaintiffs, and Plaintiffs will amend this complaint to state this amount when it becomes known to them or on proof of the damages.

WHEREFORE, Plaintiffs prays for judgment as set forth below:

AS TO ALL CAUSES OF ACTION PLAINTIFFS PRAYS FOR JUDGMENT AS FOLLOWS:

1. Pursuant to Business and Professions Code section 17200, et. seq., that all Defendants, their employees, agents, representatives, successors, assigns, and all persons who act in concert with them be permanently enjoined from making any untrue or misleading statements or falsely reporting negative credit to reporting agencies, and selling the foreclosed property on an unlawfully procured debt in violation of Business and Professions Code section 17200, et. seq.

2. Pursuant to Business and Professions Code section 17200, et. seq., that the Court make such orders or judgments as may be necessary to prevent the use or employment by any Defendant of any practices which violate section 17200, et. seq. of the Business and Professions Code, or which may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of any such practices.

3. Pursuant to Business and Professions Code section 17200 et. seq., that this court make such orders or judgments as may be necessary to prevent the use of employment by any Defendant of any practice which constitutes an unfair business practice or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unlawful actions.

4. Damages sustained by the Plaintiffs due to Defendants wrongful acts in excess of the jurisdictional limits in an amount to be proven at trial;

5. For rescission;

6. For interest on the sum at the rate of 10% per annum;

7. For punitive damages against Defendants due to their intentional and wrongful acts;

8. That Plaintiffs recover reasonable attorneys fees and for to recover its costs of suit;

9. For such other relief that the Court deems just, proper, and equitable.

DATED: January 27, 2009                                The Litigation Law Group

                                                       BY

                                                       Lawrence P. Ramirez

                                                       ATTORNEY FOR PLAINTIFFS